UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| NEMON OMAR WINTON, | ) |
| *Plaintiff,* | ) Case No. 1:23-cv-135 |
| v. | ) Judge Atchley |
| WARDEN JAMES HOLLOWAY, | ) Magistrate Judge Dumitru |
| *Defendant.* | ) |

## MEMORANDUM OPINION

After Petitioner entered a Burger King, used a weapon that appeared to be a real gun to contain several employees and force one to open the safe, took several bags of money from the safe, and fled the restaurant, he was convicted of two counts of especially aggravated kidnapping and one count of aggravated robbery. For his crimes, he received an effective sentence of forty-five year years. *State v. Winton*, No. M2018-01447-CCA-R3-CD, 2020 WL 1950777, at *1–2 (Tenn. Crim. App. April 23, 2020) ("*Winton I*"); *Winton v. State*, No. M2018-01447-CCA-R3-CD, 2023 WL 426000, at *1 (Tenn. Crim. App. Jan. 26, 2023) ("*Winton II*").[1] Now before the Court is Petitioner's pro se petition for habeas corpus relief under 28 U.S.C. § 2254 in which he challenges these convictions by asserting that his trial counsel was ineffective for failing to advise him to take a plea offer for a sentence of twenty-two years and failing to request a jury instruction for all victims based on *State v. White*, 362 S.W.2d 559 (Tenn. 2012) ("*White* jury instruction") [Doc. 1 at 20]. Respondent filed a response in opposition to the petition [Doc. 11] and the state court record [Doc. 10]. Petitioner did not file a reply, and his time for doing so has passed [Doc. 7 at 1].

---

[1] The jury also found Petitioner guilty of aggravated kidnapping of a victim. *Winton I*, at *1. But as an appellate court later reversed that conviction, *id.* at *5–6, the Court does not include it here.

1

After reviewing the parties' filings and the state court record, the Court finds that Petitioner is not entitled to relief under § 2254. Accordingly, the Court will not hold an evidentiary hearing, *see* Rules Governing § 2254 Cases, Rule 8(a) and *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007), the habeas corpus petition will be **DENIED**, and this action will be **DISMISSED**.

I.  BACKGROUND

The Tennessee Court of Criminal Appeals ("TCCA") summarized Petitioner's trial as follows:[2]

> On March 8, 2015, between 5:00 and 6:00 a.m., Stephanie Trusse[ll], Heather Hill, and Tabitha Tomlin arrived for work at a Burger King restaurant. Around 6:00 a.m., Petitioner knocked on the back door of the restaurant and Ms. Hill opened it. He entered the building and pointed what Ms. Hill believed to be a real gun at her and told her to lay on the ground. Petitioner walked to the front of the restaurant and pointed the gun at Ms. Trusse[ll] and Ms. Tomlin. He ordered them onto the ground, and the women complied. Petitioner asked Ms. Tomlin, the restaurant manager, where she kept the money, and ordered her to take him to it. Ms. Tomlin opened the safe, and Petitioner took bank deposit bags containing $7,965.71. He ordered Ms. Tomlin to lay down on the ground again. Petitioner fled out the rear of the restaurant and told Ms. Hill, who was still lying on the floor in the back, not to move or he would kill her.
>
> Petitioner was apprehended later that morning. While in custody, he told an officer that he used a fake gun and threw it in the grass prior to his arrest. An officer located the weapon and determined it was an Airsoft pistol. Manchester Police Department Officer Daniel Ray testified at trial that Airsoft pistols "ha[ve] the correct feel of a pistol" and "look[ ] just like a pistol and feel[ ] like a real pistol."
>
> At the conclusion of the trial, the jury convicted Petitioner of two counts of especially aggravated kidnapping, one count of aggravated kidnapping, and one count of aggravated robbery. Petitioner received a total effective sentence of 45 years in incarceration.

*Winton II*, at *1 (citations omitted).

---

[2] The Court has reviewed the entirety of the state court record that Respondent filed [Doc. 10] but summarizes the relevant background facts for Petitioner's convictions and § 2254 claims by citing the TCCA's recitation of facts in *Winton II*, as Petitioner does not dispute it.

2

Petitioner first challenged his convictions through a direct appeal [Doc. 10-7], and the TCCA reversed his aggravated kidnapping conviction as to Ms. Trussell but affirmed his other convictions. *See*, *generally*, *Winton I*. The Tennessee Supreme Court ("TSC") declined review [Doc. 10-11].

Petitioner next filed a petition for post-conviction relief raising various claims for ineffective assistance of counsel [Doc. 10-13 at 3–21], including claims based on his counsel's failure to request a *White* jury instruction [*Id.* at 10–13] and failure to advise him to take a plea offer for a twenty-two-year sentence [*Id.* at 18–19]. The post-conviction court held a hearing on the post-conviction petition [Doc. 10-14], which the TCCA summarized as follows:

> Petitioner testified that prior to trial counsel's representation, the Public Defender's Office represented him. Petitioner said that the Public Defender's Office secured a plea agreement of 22 years at 85 percent for Petitioner, but suggested rejecting the plea. Petitioner said that trial counsel also advised Petitioner to reject the plea. When asked whether trial counsel reviewed the State's discovery, he replied, "I guess so." Petitioner replied "I think so" in response to whether trial counsel reviewed the discovery with him. Petitioner recalled that trial counsel told him the State had a strong argument for robbery, but that "[trial counsel] didn't see where there was any kidnapping."
>
> Petitioner said that he studied case law prior to trial. When he mentioned it to trial counsel, trial counsel said "he could represent [him] effectively on [the kidnapping charges]." Petitioner said he spoke with trial counsel four or five times, but they did not talk about anything "specific." Petitioner agreed that he was generally aware of the trial process because he had "seen it on TV." Petitioner said that trial counsel did not have a "plan of what action, of what was going to be said about the kidnappings when [they] went to court." Petitioner testified that he did not understand trial counsel's defense to the kidnapping charges "other than that [trial counsel said Petitioner] had a BB gun." Petitioner said that trial counsel did not argue anything similar to what Petitioner studied prior to trial. Petitioner believed trial counsel should have argued that he did not detain the victims long enough to constitute kidnapping. He agreed it surprised him that trial counsel argued that Petitioner did not use a real weapon. In hindsight, Petitioner would have taken the plea agreement.
>
> On cross-examination, Petitioner admitted that it was his choice to reject the plea agreement. On redirect examination, Petitioner agreed that he relied on the advice of his attorneys in making the decision to go to trial.

3

Trial counsel testified that Petitioner was "very well-informed. He was, he did a lot of reading and lot of research on his own." Trial counsel said he was "fairly certain" he reviewed discovery with Petitioner. Trial counsel and Petitioner met four or five times prior to trial. Regarding the plea deal, trial counsel said, "I believe that both the Public Defender[']s [Office] and myself wanted him to take the deal." Trial counsel recalled telling Petitioner the State had a "very solid case" and talking to him about each element of kidnapping.

Trial counsel believed it would be difficult for the State to prove the kidnapping charges. However, after the State elicited testimony that Petitioner forced one of the victims to lay down on the ground and stay there, he told Petitioner "we're sunk on that." Trial counsel said that he was surprised the jury convicted Petitioner of kidnapping the other victims. Trial counsel said he believed Petitioner "was informed about the nature of a trial, how it was done." Regarding whether to call defense witnesses, trial counsel said Petitioner made it "absolutely" clear he did not want to call his wife. Trial counsel reached out to the victims, but they would not speak with him. Trial counsel said that he met with a detective and examined the "BB gun" Petitioner used. He determined that it looked like a "BB gun," and did not have the "action of an actual gun." Trial counsel did not recall whether the State asked the court to limit the *White* jury instructions to Ms. Tomlin or whether he requested the jury instructions to apply to all of the victims.

On cross-examination, trial counsel affirmed that he researched relevant case law, reviewed the Public Defender's Office's notes, and visited the crime scene in preparation for trial. Trial counsel agreed his strategy was to argue that the victims could not "have reasonably believed [the BB gun] to be a [real] gun." He admitted that, in retrospect, he may have changed his trial strategy. However, at the time he "thought that was a sound tactic[.]"

The post-conviction court entered a written order denying post-conviction relief on September 13, 2021. The court found trial counsel's testimony "more credible" than Petitioner's testimony. The post-conviction court noted that post-conviction counsel acknowledged the jury received a *White* jury instruction for the charge of especially aggravated kidnapping of Ms. Tomlin. The court concluded that trial counsel was not ineffective for failing to request a *White* jury instruction as to Ms. Hill because she was not a robbery victim. The court found that the *White* jury instruction issue was moot as to Ms. Trussell because Petitioner's conviction for aggravated kidnapping of Ms. Trussell was reversed.

Regarding trial counsel's strategy to show that the victims could not have believed that Petitioner's BB gun was a real gun, the post-conviction court stated that the strategy was "based on [trial counsel's] own personal examination of the gun, and the [c]ourt should defer to his decision."

4

*Winton II*, at *1–3 (citations omitted). In his appeal challenging the denial of his post-conviction petition, Petitioner, through counsel, again claimed that his counsel was ineffective with regard to the *White* jury instruction but did not raise any claim of ineffective assistance of counsel based on counsel's actions regarding the plea offer [Doc. 10-16]. The TCCA affirmed the post-conviction court's denial of relief, *Id.* at *3–5, and the TSC denied review [Doc. 10-21].

## II. STANDARD OF REVIEW

The Court's review of the instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows a federal court to grant habeas corpus relief on any claim adjudicated on the merits in a state court only where that adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established" United States Supreme Court precedent; or (2) "resulted in a decision that was based on an unreasonable determination of facts in light of the evidence presented." *See* 28 U.S.C. § 2254(d)(1) & (2); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

This Court may grant habeas corpus relief under the "contrary to" clause where the state court (1) "arrive[d] at a conclusion opposite to that reached by [the Supreme Court] on a question of law; or (2) decide[d] a case differently than the Supreme Court on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The Court may grant habeas corpus relief under the "unreasonable application" clause where the state court applied the correct legal principle to the facts in an unreasonable manner. *Id.* at 407.

But even an incorrect state court decision is not necessarily unreasonable. *See Schriro*, 550 U.S. at 473 ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." (citing *Williams*, 529 U.S. at 410)). Rather, this Court may grant relief for a claim the state court decided on its merits only where the state court ruling "was so lacking in

5

justification that there was an error understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Also, before a federal court may grant habeas corpus relief, the petitioner must have first exhausted his available state remedies for the claim. 28 U.S.C. §2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to have "fairly presented" each federal claim to all levels of the state appellate system to ensure that states have a "full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990) (citing *Justices v. Boston Mun. Court v. Lydon*, 466 U.S. 294, 302–03 (1984)). Tennessee has determined that presentation of a claim to the TCCA will satisfy the requirement of presentation to the state's highest court. Tenn. S. Ct. R. 39.

If a prisoner never presented a claim to the highest available state court and a state procedural rule now bars presentation of the claim, the petitioner procedurally defaulted that claim. *Coleman v. Thompson*, 501 U.S. 722, 731–32, 750 (1991). In such circumstances, the claim is technically exhausted but procedurally defaulted. *Gray v. Netherland*, 518 U.S. 2074, 2080 (1996); *Coleman*, 501 U.S. at 732; *Jones v. Bagley*, 696 F.3d 475, 483 (6th Cir. 2012) ("When a petitioner has failed to present a legal issue to the state courts and no state remedy remains available, the issue is procedurally defaulted"). Tennessee petitioners may generally proceed through only one full round of the post-conviction process, and Tennessee imposes a one-year statute of limitation on such actions. Tenn. Code Ann. § 40-30-102(a) (one-year limitation period), § 40-30-102(c) ("one petition" rule).

A federal district court may review a procedurally defaulted habeas corpus claim only where the petitioner shows cause for his default and resulting prejudice, "or . . . that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 749–50. Errors of post-conviction counsel generally are not "cause" to excuse a procedural

6

default. *Id.* at 753–53. But the Supreme Court established an equitable exception to this rule in *Martinez v. Ryan*, holding that inadequate assistance of post-conviction counsel or the absence of such counsel may establish cause for a prisoner's procedural default of an ineffective assistance of trial counsel claim under certain circumstances. *Martinez v. Ryan*, 566 U.S. 1, 9, 17 (2012).

However, the *Martinez* exception does not apply to a claim of ineffective assistance of trial counsel that a petitioner raised in the initial-review collateral stages and defaulted on appeal. *See, e.g.*, *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1136 (6th Cir. 2016) (stating that *Martinez* did not apply "because those claims were raised and rejected on the merits by the initial postconviction court, and ineffective assistance of counsel on post-conviction appeal cannot establish 'cause' to excuse [petitioner]'s procedural default, which occurred only in the Tennessee Court of Criminal Appeals").

### III. ANALYSIS

The Court will address Petitioner's ineffective assistance of counsel claim regarding his plea offer before addressing his claim regarding the *White* jury instruction.

#### A. Plea Offer

As set forth above, Petitioner raised his claim that his counsel was ineffective regarding his plea deal in his petition for post-conviction relief [Doc. 10-13 at 18–19] but not in his appeal of the denial of that petition [Doc. 10-16]. As such, Petitioner procedurally defaulted this claim in his post-conviction appeal.

Petitioner has not presented any reason for the Court to excuse his procedural default of this claim. Moreover, even if Petitioner had attempted to rely on the ineffective assistance of his post-conviction appellate counsel to excuse the procedural default, that is not grounds for the Court to excuse it. *Middlebrooks*, 843 F.3d at 1136. As such, this claim is **DENIED** on this ground.

7

### B. *White* Jury Instruction

Petitioner next claims that his counsel was ineffective for failing to request a *White* jury instruction as to all the victims. The TCCA addressed this claim as follows, after setting forth the relevant ineffective assistance of counsel standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984):

> Petitioner argues trial counsel was ineffective for failing to request the *White* jury instruction apply to all of the victims. We disagree.
>
> A few years after *State v. White*, the supreme court addressed the issue of whether a *White* jury instruction must be given when a defendant is charged with the kidnapping and robbery of separate victims. *See State v. Teats*, 468 S.W.3d 495 (Tenn. 2015); *State v. Williams*, 468 S.W.3d 510 (Tenn. 2015). In *Teats*, the supreme court determined that:
>
>> [a] *White* jury instruction is not required when a defendant is charged with the kidnapping and robbery of different victims. The jury instruction we articulated in *White* was intended to address the due process concerns that arise when a defendant is charged with kidnapping a victim and other crimes, such as robbery, rape, or assault, that involve some inherent confinement of that victim . . . . Where a defendant is charged with kidnapping and an accompanying offense involving some confinement of the same victim, there are appropriate due process concerns that the defendant could be convicted of two crimes—e.g. robbery and kidnapping—when he has only committed one crime—robbery. But where, as in this case, the State charged the [d]efendant with robbing the restaurant manager and kidnapping four other employees, the [d]efendant does not stand the risk of being convicted of kidnapping a victim he confined only long enough to rob.
>
> *Teats*, 468 S.W.3d at 503. "Simply put, where a defendant kidnaps one victim while robbing another, the due process concerns articulated in *White* are not present, as the *kidnapping of one or more victims can never be 'essentially incidental' to an offense perpetrated against a different victim or victims*." *Williams*, 468 S.W.3d at 516 (citing *White*, 362 S.W.3d at 580) (emphasis added).
>
> Petitioner cannot establish deficient performance. As noted by the post-conviction court, the trial court provided a *White* jury instruction for the charge of especially aggravated kidnapping of Ms. Tomlin. Petitioner was not entitled to a *White* jury instruction as to Ms. Hill because she was only a victim of kidnapping. The issue as related to Ms. Trusse[ll] is moot because this Court reversed Petitioner's

8

aggravated kidnapping conviction. Trial counsel was not ineffective for failing to request *White* jury instructions apply to all of the victims. Petitioner is not entitled to relief.

*Winton II*, at *4.

Petitioner has not alleged or established that the TCCA's denial of this claim was an unreasonable application of federal law or an unreasonable determination of the facts considering the evidence presented. To the contrary, the TCCA correctly applied the applicable *Strickland* standard to find that Petitioner's counsel was not deficient by failing to request a *White* jury instruction as to every victim.

Specifically, as the TCCA noted, under Tennessee law, a *White* jury instruction is only required where a defendant is charged with both kidnapping and a related charge that also requires confinement of the same victim. *Teats*, 468 S.W.3d at 503. As such, the TCCA reasonably found that, in Petitioner's case, Petitioner was not entitled to relief based on his attorney's failure to request a *White* jury instruction for each victim where (1) the trial court correctly included a *White* jury instruction for the aggravated kidnapping charge against Petitioner as to victim Tomlin; (2) the trial court correctly did not include a *White* jury instruction as to victim Hill because the only charge against Petitioner related to this victim was kidnapping; and (3) the TCCA's reversal of Petitioner's aggravated kidnapping charge for victim Trussell mooted any argument regarding this victim. Accordingly, Petitioner is not entitled to § 2254 relief for this claim.

### IV. CONCLUSION

For the reasons set forth above, Petitioner's petition for § 2254 relief [Doc. 1] will be **DENIED**, and this action will be **DISMISSED**.

The Court must now consider whether to issue a certificate of appealability ("COA") should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may

9

appeal a final order in a habeas corpus proceeding only if he is issued a COA, and a COA may issue only where a Petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a habeas petition on a procedural basis without reaching the underlying claim, a COA should only issue if "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the court dismissed a claim on the merits, but reasonable jurists could conclude the issues raised are adequate to deserve further review, the petitioner has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack*, 529 U.S. at 484.

Reasonable jurists could not debate the Court's conclusion that Petitioner procedurally defaulted his ineffective assistance of counsel claim related to the plea offer. Additionally, reasonable jurists could not conclude that Petitioner has made a substantial showing of a denial of a constitutional right with regard to his *White* jury instruction claim, such that it would be adequate to deserve further review. Accordingly, a **COA SHALL NOT ISSUE.** Also, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Fed. R. App. P. 24.

    SO ORDERED.

    AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

    */s/ Charles E. Atchley, Jr.*
    **CHARLES E. ATCHLEY, JR.**
    **UNITED STATES DISTRICT JUDGE**